FILED
2017 Mar-28  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| MORGAN ALAYNA NICHOLAS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** |
| ) | |
| JOHN DOE, an unknown driver; ) | |
| STATE FARM MUTUAL ) | |
| AUTOMOBILE INSURANCE ) | |
| COMPANY, et al. ) | |
| ) | |
| **Defendants.** ) | |

## NOTICE OF REMOVAL

Comes now defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), and hereby removes this case to the United States District Court for the Northern District of Alabama, Jasper Division, respectfully showing unto this Court as follows:

1.     This civil action was filed on February 20, 2017 in the Circuit Court of Marion County, Alabama, and was pending in that State Court as CV-2017-900017 at the time of this removal.  According to the records of the Circuit Court of Marion County, State Farm was served with the summons and complaint on February 24, 2017.  Accordingly, this Notice of Removal is filed within the 30-day period of time prescribed by 28 U.S.C. §1446(b).  *See, e.g., Murphy Bros., Inc., v.*

*Michetti Pipe Stringing, Inc.*, 119 S.Ct. 1322 (1999) (service of summons and complaint begins the 30-day period for removal).  Pursuant to 28 U.S.C. §1446(a), a true and correct copy of all process and pleadings served upon the defendant is attached hereto as **Exhibit A**.

## COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN THE PARTIES

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1332, and removal is proper pursuant to 28 U.S.C. §1441, in that there is diversity of citizenship among the real parties in interest as follows:

a.      The plaintiff, Morgan Alayna Nicholas, ("Plaintiff") is a resident of Memphis, Tennessee. *See* Compl., ¶ 1.

b.      The defendant, State Farm, is a citizen of the State of Illinois since it is incorporated and maintains its principle place of business in the State of Illinois. *See* 28 U.S.C. §1332(c)(1).

c.      The citizenship of the various fictitiously-pleaded defendants numbered 1 through 9 and fictitiously-named "John Doe" is to be disregarded for purposes of removal. *See* 28 U.S.C. §1441(b).[1]

## AMOUNT IN CONTROVERSY EXCEEDS $75,000

3.      In addition to diversity of citizenship as demonstrated above, this Court has jurisdiction pursuant to 28 U.S.C. §1332, and removal is proper pursuant

---

[1] Plaintiff avers that it is "believed" that "John Doe" is an Alabama resident, which even if true, would not disrupt the diversity of the parties in this action. *See* Compl., ¶ 2.

to 28 U.S.C. §1441, in that there is a sufficient jurisdictional amount in controversy.  This suit arises from an automobile accident allegedly caused by an unknown and uninsured motorist and Plaintiff's claim for Uninsured Motorist ("UM") coverage benefits under a State Farm policy of car insurance.  In the Complaint, Plaintiff claims she "is entitled to full uninsured motorist benefits provided [by the policy]."  Compl., ¶ 24.  In Count Two, Plaintiff has demanded judgment in an unspecified amount of compensatory and punitive damages, "including, but not limited to, the amount of all applicable benefits due that were in force and effect …"  Compl, Count Two at *ad damnum*.  The policy at issue in this action includes UM coverage in the amount of $250,000 per person.  *See* Certified Policy, at Declarations (attached hereto as **Exhibit B**).  Prior to the filing of this action, Plaintiff demanded payment of the full $250,000 limits of said coverage.  *See* Affidavit of Eileen Griffin Gilliam, ¶¶ 3, 4 (attached hereto as **Exhibit C**).  The $250,000 UM coverage benefits demanded and in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.  *See* 28 U.S.C. §1332(a).

## REMOVAL PERFECTED

4.  As set forth above, diversity of citizenship exists between the parties in this cause, and the amount in controversy exceeds $75,000, exclusive of interest

and costs.   Accordingly, pursuant to 28 U.S.C. §§1332, 1441, and 1446, as amended, the action is removed to this Court.

## NOTICE TO THE STATE COURT

5.      Promptly after the filing of this Notice of Removal with this Court, in accordance with 28 U.S.C. §1446(d), State Farm will cause a copy of this Notice of Removal to be served upon Plaintiff and filed with the Clerk of the Circuit Court of Marion County, Alabama.

Respectfully submitted,

/s/ C. Dennis Hughes
Bert S. Nettles
Alabama Bar No. asb-5850-s63b
C. Dennis Hughes
Alabama Bar No. asb-1033-h65c
W. McKinley Dunn
Alabama Bar No. asb-1762-b59r

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

**OF COUNSEL:**
**HAND ARENDALL LLC**
1801 Fifth Avenue North, Suite 400
Birmingham, AL 35203
TEL:  205-324-4400
FAX:  205-278-9797
bnettles@handarendall.com
cdhughes@handarendall.com
mdunn@handarendall.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice of Removal on all counsel of record by placing by a copy of the same in the U.S. Mail, first class postage prepaid and properly addressed as follows, this the 27th day of March, 2017:

Thomas P. Melton
Attorney at Law, L.L.C.
The Kress Building
301 Nineteenth Street North, Suite 516
Birmingham, AL  35203

_____
Of Counsel

# Exhibit A

## ALABAMA SJIS CASE DETAIL

**PREPARED FOR: CARLA HOLLOWAY**


alacourt.com

County: **49**     Case Number: **CV-2017-900017.00**     Court Action:
Style: **MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS**

Real Time

### Case Action Summary

| Date: | Time | Code | Comments | Operator |
|-------|------|------|----------|----------|
| 2/20/2017 | 9:06 AM | ECOMP | COMPLAINT E-FILED. | MEL011 |
| 2/20/2017 | 9:08 AM | FILE | FILED THIS DATE: 02/20/2017     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | EORD | E-ORDER FLAG SET TO "Y"     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | ASSJ | ASSIGNED TO JUDGE: JOHN H BENTLEY     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | TDMJ | JURY TRIAL REQUESTED     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | SCAN | CASE SCANNED STATUS SET TO: N     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | ORIG | ORIGIN: INITIAL FILING     (AV01) | AJA |
| 2/20/2017 | 9:08 AM | C001 | INDIGENT FLAG SET TO: N     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | C001 | C001 E-ORDER FLAG SET TO "N"     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | C001 | LISTED AS ATTORNEY FOR C001: MELTON THOMAS PLOWDE | AJA |
| 2/20/2017 | 9:08 AM | C001 | C001 PARTY ADDED: NICHOLS MORGAN ALAYNA     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D001 | D001 PARTY ADDED: AUTOMOBILE INSURANCE COMPANY, IN | AJA |
| 2/20/2017 | 9:08 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D001 | INDIGENT FLAG SET TO: N     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D001 | D001 E-ORDER FLAG SET TO "N"     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D001 | CERTIFIED MAI ISSUED: 02/20/2017 TO D001   (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D002 | INDIGENT FLAG SET TO: N     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D002 | D002 E-ORDER FLAG SET TO "N"     (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D002 | CERTIFIED MAI ISSUED: 02/20/2017 TO D002   (AV02) | AJA |
| 2/20/2017 | 9:08 AM | D002 | D002 PARTY ADDED: STATE FARM MUTUAL AUTOMOBILE INS | AJA |
| 2/28/2017 | 4:09 PM | ESERC | SERVICE RETURN | MET |
| 2/28/2017 | 4:09 PM | D002 | SERVICE OF CERTIFIED MAI ON 02/24/2017 FOR D002 | MET |
| 2/28/2017 | 4:09 PM | ESERC | SERVICE RETURN | MET |
| 2/28/2017 | 4:10 PM | D001 | SERVICE OF CERTIFIED MAI ON 02/24/2017 FOR D001 | MET |

**END OF THE REPORT**

DOCUMENT 1

ELECTRONICALLY FILED
2/20/2017 9:06 AM
49-CV-2017-900017.00
CIRCUIT COURT OF
MARION COUNTY, ALABAMA
DENISE MIXON, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca:<br>4S<br><br>Date of Filing:<br>02/20/2017    Judge Code: |
| --- | --- | --- |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

**MORGAN ALAYNA NICHOLS v. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, I**

**First Plaintiff:** ☐ Business  ☑ Individual          **First Defendant:** ☐ Business  ☑ Individual
☐ Government  ☐ Other                                 ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☑ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other:_____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
       Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
       Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING          A ☐ APPEAL FROM          O ☐ OTHER
                                            DISTRICT COURT

              R ☐ REMANDED              T ☐ TRANSFERRED FROM
                                            OTHER CIRCUIT COURT

| **HAS JURY TRIAL BEEN DEMANDED?**   ☑ YES  ☐ NO | **Note:** Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure) |
| --- | --- |

**RELIEF REQUESTED:**          ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

MEL011                    2/20/2017 9:06:59 AM              /s/ Thomas P. Melton IV
_____            _____        _____
                          Date                             Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**          ☐ YES  ☐ NO  ☑ UNDECIDED

DOCUMENT 2

Case 6:17-cv-00473-LSC   Document 1   Filed 03/27/17   Page 9 of 84   ELECTRONICALLY FILED
2/20/2017 9:06 AM
49-CV-2017-900017.00
CIRCUIT COURT OF
MARION COUNTY, ALABAMA
DENISE MIXON, CLERK

## IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

| | |
|---|---|
| **MORGAN ALAYNA NICHOLAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) |
| **JOHN DOE, an Unknown Driver;** | ) |
| **STATE FARM MUTUAL AUTOMOBILE** | ) |
| **INSURANCE COMPANY; and, Fictitious** | ) |
| **Party Defendants:** | ) |

No. 1, whether singular or plural, plaintiff hereby intending to designate the unknown driver of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit (hereinafter referred to as "Unknown Driver" or "John Doe");

No. 2, whether singular or plural, plaintiff hereby intending to designate the owner of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit;

No. 3, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, whose negligent or wanton conduct contributed to cause the accident and injuries to plaintiff;

No. 4, whether singular or plural, plaintiff hereby intending to designate that entity or those entities who or which were the master or principal of the driver of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit;

No. 5, whether singular or plural, plaintiff hereby intending to designate that entity or those entities for whom the driver of the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway at the time of this accident was performing a service or employment duty;

No. 6, whether singular or plural, plaintiff hereby intending to designate that entity or those entities who or which negligently entrusted the motor vehicle to the driver of the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway at the time of this accident;

No. 7, whether singular or plural, plaintiff hereby intending to designate that entity or those entities on whose behalf the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway was being operated at the time of said occurrence;

No. 8, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, who or which is the predecessor in interest of any of those entities described above;

No. 9, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, who or which is the successor in interest of any of those entities described above.

Plaintiff avers that the identities of those fictitious party defendants herein are otherwise unknown to the Plaintiff at this time or, if their names are known to the Plaintiff, their identities as proper party Defendants are not known to the Plaintiff at this time, and their true names will be substituted by amendment when ascertained,

|  | ) |
| **Defendants.** | ) |
|  | ) |

---

## COMPLAINT

---

1.     Plaintiff, Morgan Alayna Nicholas ("Plaintiff"), is over the age of nineteen (19) years and is a resident of Memphis, Tennessee.

2.     Defendant, John Doe, is an unknown driver of a third party non-contact vehicle which caused the subject accident.  The naming of the subject "John Doe" Defendant is expressly authorized and required under Tennessee Code Ann. § 56-7-1206(b).  It is believed that the John Doe Defendant is an Alabama resident.

3.     Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), is an insurance company licensed to do business in both Alabama and Tennessee and was at all times relevant herein doing business by agent in Alabama and Tennessee.

### STATEMENT OF FACTS

4.     On May 15, 2015, at approximately 10:30 a.m., Plaintiff was traveling westbound on Interstate 22 heading home to Memphis from Birmingham where she was a nursing student at

2

Samford University.

5.     Plaintiff's mother, Mary Christina Nicholas, and Plaintiff's father, Robert

Nicholas, were following her back to Memphis and were traveling approximately thirty (30)

seconds behind her at the time of the subject accident.

6.     As Plaintiff was traveling on Interstate 22 near Exit 7 in Marion County, a red

Ford Mustang with black detailing merged onto the Interstate in the lane to Plaintiff's right.  This

red Ford Mustang was operated by John Doe, an unknown driver designated as a named party

hereto and also as Fictitious Party Defendant number 1 (hereinafter "John Doe" and/or

"Unknown Driver").

7.     Within seconds of merging onto the Interstate, the unknown driver, John Doe,

without notice or warning, unexpectedly attempted to merge into Plaintiff's lane thereby forcing

Plaintiff to take sudden evasive action to avoid a collision.

8.     The unexpected and reckless actions of the unknown driver, John Doe,  caused

Plaintiff to subsequently lose control of her vehicle and to crash into the median in her attempt to

avoid a collision with the Unknown Driver.

9.     Upon collision with the median, the air bags in Plaintiff's Ford Taurus deployed.

Despite the air-bags deploying and the Plaintiff being properly belted, Plaintiff sustained injuries.

10.     Within approximately thirty (30) seconds of the unknown driver, John Doe,

causing Plaintiff to crash into the median, Plaintiff's mother and father arrived at the scene of the

crash and immediately recognized that Plaintiff's vehicle had been in the accident.

11.     Upon arrival at the scene of the crash, Plaintiff's mother and father noticed the

unknown driver in the red Mustang, John Doe, stopped on the side of the road accompanied by

3

his minor son.

12.     After parking on the side of the road and exiting his vehicle, Plaintiff's father was approached by the unknown driver, John Doe, as he ran toward his daughter's vehicle.  The unknown driver, John Doe, excitedly apologized and explained that the accident was his fault. The unknown driver, John Doe, stated that he was rushing to the hospital in Tupelo, Mississippi to see his son who had been in an accident.

13.     Plaintiff's mother and father proceeded to Plaintiff's vehicle where they attended to their daughter.

14.     Following the conversation with Plaintiff's father, the unknown driver, John Doe, left the scene of the accident before providing his information to the police and without giving Plaintiff or her parents any notice.

15.     Plaintiff did not seek to get the name of the unknown driver as she was injured in the accident and was taken to the hospital by ambulance upon being extricated from her vehicle. Plaintiff's father did not get the name and contact information for the unknown driver as he had the expectation that the unknown driver was remaining at the scene to talk to authorities, and he was attending to his injured daughter.

16.     Plaintiff, by and through counsel, has tried, unsuccessfully, to locate the John Doe unknown driver, who was not named on the accident report prepared by the Alabama State Trooper although the State Trooper did acknowledge on the report that the unknown driver, John Doe, merged onto Interstate 22 thereby causing the subsequent loss of control by Plaintiff.

17.     For the aforementioned reasons, Plaintiff submitted an uninsured motorist claim to Defendant, State Farm, pursuant to her policy provisions.

DOCUMENT 2

18.     Since receiving her uninsured motorist claim, the Defendant, State Farm, has on multiple occasions denied Plaintiff's claim in its entirety despite being provided with all facts contained herein.

<u>**COUNT ONE**</u>

**(Negligence and/or Wantonness Claims Against Unknown Driver, John Doe Defendant)**

19.     Plaintiff adopts and realleges each and every previously stated provision of this Complaint as if fully set out herein.

20.     On or about May 15, 2015, Plaintiff was operating a vehicle which was traveling westbound on Interstate 22.  At the same time and place, unknown driver, John Doe, merged onto the Interstate into the lane on Plaintiff's right. Within seconds of merging onto the Interstate, unknown driver, John Doe, unexpectedly attempted to merge into Plaintiff's lane, thereby forcing Plaintiff to take sudden, evasive action to avoid a collision. The unexpected and reckless actions of unknown driver, John Doe, caused Plaintiff to subsequently lose control of her vehicle and to crash into the median in her attempt to avoid a collision with the unknown driver.

21.     Unknown driver, John Doe, owed a duty to Plaintiff to operate his vehicle in a reasonable and prudent manner.  This unknown driver, John Doe, breached that duty and instead, was negligent and/or wanton in the operation of his vehicle by failing to maintain a proper look out and/or by failing to maintain control of his vehicle.

22.     Plaintiff's injuries were the proximate result of third party unknown driver, John Doe's, negligent and/or wanton operation of his vehicle.

23.     As a proximate consequence of the negligent and/or wanton conduct of

5

unknown driver, John Doe, Plaintiff was personally injured and damaged as follows:

(a)     she suffered injury to her left knee requiring surgery;

(b)     she suffered head trauma;

(c)     she suffered substantial medical rehabilitative expenses;

(d)     she suffered strains, sprains, bruises and contusions;

(e)     she suffered and continues to suffer physical pain and mental anguish;

(f)     she suffered lost wages;

(g)     she lost enjoyment of life; and,

(h)     medical bills have been incurred in an effort to cure her injuries.

24.     At all relevant times, State Farm Mutual Automobile Insurance Company, and/or one or more of the fictitious party defendants, had in full force contracts or policies of insurance providing for uninsured motorist coverage on the vehicle in which Plaintiff, Morgan Alayna Nicholas, was a driver at the time of the occurrence made the basis of this lawsuit.  Pursuant to said policy or policies' language and pursuant to Tennessee and/or Alabama law, Plaintiff, Morgan Alayna Nicholas, was insured under said policy or policies, and is entitled to full uninsured motorist benefits provided therein based upon the negligence and/or wantonness of unknown driver, John Doe.

WHEREFORE, on the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff, and against the Defendants for compensatory damages and/or exemplary damages in an amount which will adequately compensate Plaintiff for the injuries and damages sustained by her due to the Defendants' conduct.  Further, Plaintiff requests that the Court enter judgment consistent with jury's verdict, and that it also award

Plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

**COUNT TWO**
**(Breach of Contract)**

25.     Plaintiff adopts and realleges each and every material allegation and averment of this Complaint as if fully set out herein.

26.     On or about May 15, 2015, Defendant, State Farm, had an existing contract or policy of insurance covering Plaintiff and/or the vehicle which Plaintiff was operating on the date of the subject accident.

27.     On or about May 15, 2015, Plaintiff was involved in an automobile accident caused by a third party unknown driver, John Doe, and said insurance policy was in full force and effect at the time of this occurrence.  Pursuant to said policy language and, pursuant to Tennessee and/or Alabama law, Plaintiff was insured under said policy and is entitled to uninsured motorist benefits provided therein.

28.     Defendant, State Farm, has breached its contract with the Plaintiff by denying her claim to recovery despite her timely providing notice of the subject accident; timely giving notice of her injuries and damages; and, providing clear and convincing evidence as to the wrongful conduct of a phantom motorist who caused said accident by her father who was not an occupant of her vehicle.

29.     As a proximate result of the breach of contract of Defendant, State Farm, Plaintiff has suffered damages as expressed herein.

WHEREFORE, Plaintiff demands judgment against Defendant, State Farm, for

7

DOCUMENT 2

compensatory, incidental and consequential damages including, but not limited to, the amount of all applicable benefits due that were in force and effect at the time of the incident made the basis of this lawsuit. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing her lawsuit.

## COUNT THREE

### (Bad Faith Pursuant to T.C.A. § 56-7-105)

30.     Plaintiff adopts and realleges each and every material allegation and averment of this Complaint as if fully set out herein.

31.     As heretofore alleged, Plaintiff has complied with Tennessee Code Annotated § 56-7-105. Plaintiff hereby alleges (1) that the policy became due and payable under its terms; (2) that she has made a formal demand for payment; (3) that more than sixty days have passed from the date of making the demand and that such demand has been denied in its entirety by Defendant, State Farm, and (4) that Defendant, State Farm's, refusal to pay was in bad faith.

32.     Plaintiff avers that the purposes for the formal demand under § 56-7-105 have been met as (1) Defendant State Farm had an opportunity to investigate the insured's claim and loss; (2) Defendant, State Farm, was made aware or had notice of Plaintiff's t intent to assert a bad faith claim, if the disputed claim was not paid, and (3) over sixty (60) days has expired after the insured give such notice before filing suit.

33.     Defendant, State Farm, in denying this claim has specifically relied upon the sole position that Plaintiff had not met the clear and convincing threshold in establishing the existence of a second vehicle.

8

34.     In taking this position, Defendant, State Farm, has chosen to ignore or has chosen to fail to investigate Plaintiff's father's testimony that the unknown driver, John Doe, admitted to him at the scene that he caused the accident.

35.     As Plaintiff's father was not an occupant of her vehicle, Plaintiff hereby avers that she has met the clear and convincing standard required by T.C.A § 56-7-1201(e).

36.     Plaintiff avers that the accident was reported to law enforcement immediately and that law enforcement documented the wrongful conduct of the unknown driver.  In addition, Plaintiff further avers that she was not negligent in failing to determine the identity of the unknown driver, John Doe, as previously alleged herein.

37.     As a proximate result of the bad faith conduct of Defendant, State Farm, Plaintiff has suffered damages as previously expressed herein and damages for the delay in payment including the loss of use of claim proceeds and attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendant State Farm for compensatory, punitive, incidental and consequential damages.  Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing her lawsuit.

## COUNT FOUR

### (Bad Faith Claims - Alabama and/or Tennessee law)

38.     Plaintiff adopts and realleges each and every material allegation and averment of this Complaint as if fully set out herein.

39.     The creation of the insurance contract between Plaintiff and Defendant, State Farm, placed on Defendant a duty to exercise good faith and fair dealing in the performance of its

9

contractual obligations under the terms of the agreement.  Defendant, State Farm, breached said duty by refusing to pay benefits set out in the policy, where there existed no lawful basis for its refusal coupled with its actual knowledge of the absence of any legitimate and/or arguable basis for its refusal to pay the benefits.

39.     Defendant, State Farm, breached its duty of good faith and fair dealing under the terms of the aforesaid contract by expressly refusing to consider Plaintiff's claim.

40.     Plaintiff avers that State Farm had materials in its possession providing clear and convincing evidence of the wrongful actions of a phantom non-contact vehicle from a source other than Plaintiff or occupants of Plaintiff's vehicle.

41.     As a proximate result of the bad faith of Defendant, State Farm, Plaintiff suffered damages including the loss and use of premium payments for coverage which has not been afforded; has lost the use and benefit of claim proceeds; has suffered mental anguish; and, has suffered other damages as previously asserted herein.

42.     Plaintiff states that Defendant has a pattern and practice of similar conduct and that such conduct was intentionally, wantonly, wilfully and/or recklessly inflicted entitling Plaintiff to punitive damages.

43.     Defendant consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiff, thereby depriving Plaintiff of legal rights and entitling Plaintiff to punitive damages against Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant State Farm for compensatory, punitive, incidental and consequential damages.  Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiff interest

10

DOCUMENT 2

from the date of judgment and the costs incurred by the Court in managing her lawsuit.

## COUNT FIVE

### (Fictitious Party Defendants)

44.    Plaintiff adopts and realleges each and every previously stated provision of this Complaint as if fully set out herein.

45.    Plaintiff states that the actions of the following fictitious party Defendants caused, combined and/or contributed to Plaintiff's injuries and damages:

No. 1, whether singular or plural, plaintiff hereby intending to designate the unknown driver of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit (hereinafter referred to as "Unknown Driver" or "John Doe");

No. 2, whether singular or plural, plaintiff hereby intending to designate the owner of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit;

No. 3, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, whose negligent or wanton conduct contributed to cause the accident and injuries to plaintiff;

No. 4, whether singular or plural, plaintiff hereby intending to designate that entity or those entities who or which were the master or principal of the driver of the motor vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway on the occasion made the basis of this lawsuit;

No. 5, whether singular or plural, plaintiff hereby intending to designate that entity or those entities for whom the driver of the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway at the time of this accident was performing a service or employment duty;

No. 6, whether singular or plural, plaintiff hereby intending to designate that entity or those entities who or which negligently entrusted the motor vehicle

to the driver of the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway at the time of this accident;

No. 7, whether singular or plural, plaintiff hereby intending to designate that entity or those entities on whose behalf the vehicle which merged over on plaintiff's motor vehicle thereby running her off the roadway was being operated at the time of said occurrence;

No. 8, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, who or which is the predecessor in interest of any of those entities described above;

No. 9, whether singular or plural, plaintiff hereby intending to designate that entity or those entities other than those entities described above, who or which is the successor in interest of any of those entities described above.

3.      Plaintiff avers that the identities of those fictitious parties defendant herein are otherwise unknown to the Plaintiff at this time or, if their names are known to the Plaintiff, their identities as proper parties defendants are not known to the Plaintiff at this time, and their true names will be substituted by amendment when ascertained,

WHEREFORE, on the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff, and against the Defendant, for compensatory damages in an amount which will adequately compensate Plaintiff for the injuries and damages sustained by her due to the Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of Defendant's conduct. Further, Plaintiff requests that the Court enter judgment consistent with jury's verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

s/Thomas P. Melton
THOMAS P. MELTON
Attorney for Plaintiff (MEL011)

**OF COUNSEL:**

**THOMAS P. MELTON**
**Attorney at Law, L.L.C.**
The Kress Building
301 Nineteenth Street North, Suite 516
Birmingham, Alabama 35203
Direct Dial (205) 458-4556
Direct Fax (205) 458-4557
E-mail: tmelton@tmeltonlaw.com

### **JURY DEMAND**

Plaintiff demands a trial by struck jury on all issues in this cause.

s/Thomas P. Melton
Attorney for Plaintiff

**SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

John Doe
c/o State Farm Mutual Automobile Insurance Company
CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

State Farm Mutual Automobile Insurance Company
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

ELECTRONICALLY FILED
2/20/2017 9:06 AM
49-CV-2017-900017.00
CIRCUIT COURT OF
MARION COUNTY, ALABAMA
DENISE MIXON, CLERK

## IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

| | |
|---|---|
| **MORGAN ALAYNA NICHOLAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) |
| **JOHN DOE, an Unknown Driver;** | ) |
| **STATE FARM MUTUAL AUTOMOBILE** | ) |
| **INSURANCE COMPANY; et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

COMES NOW the Plaintiff in the above-styled cause and demands that Defendant State Farm Mutual Automobile Insurance Company (hereinafter "Defendant") answer the following Interrogatories within thirty (30) days as set forth in the Alabama Rules of Civil Procedure:

1.      Has the Defendant been properly designated in the summons and complaint for purposes of suing and/or being sued?  If not, please set forth your proper legal designation.

2.      Please identify the person answering these interrogatories by name and job title within this Defendant's organization.

3.      Please identify that person who was responsible at the lowest level of claims review and adjustment in your organization for the handling of Plaintiff's insurance claim made the basis of this suit.

4.      Please identify that person who was at the highest level in Defendant's organization to review Plaintiff's claim made the basis of this suit.

5.      Please state each and every action of investigation or review taken by any employee, agent or claims examiner on behalf of this Defendant on the Plaintiff's claim made the

basis of this suit prior to this Defendant's refusal to pay these claims.

6.      Please describe each and every level of review this claim was submitted to within Defendant's organization prior to its refusal to pay Plaintiff's claim.

7.      Please state whether this Defendant maintains that Plaintiff or any other person failed to provide this Defendant with any necessary forms or information that prevented this Defendant from making a full and fair evaluation of Plaintiff's claim.  If so, please explain what was not provided, by whom and the nature of its importance.

8.      Did this Defendant's employees adhere to Defendant's policies, manuals or internal requirements for the proper review and evaluation of these claim?  If not, please explain what variations occurred and when such variation was discovered.

9.      List each and every legal, medical, vocational or economic expert consulted by this Defendant (whether internally or externally) on any aspect of the claim made the basis of this suit prior to the Defendant's refusal to pay said claim.

10.      Please identify that person within Defendant's organization who made the final decision not to pay Plaintiff's claim made the basis of this suit (name and job title).

11.      Does the Defendant maintain that Plaintiff made any misrepresentation to this Defendant in either their application for insurance or in any aspect of submitting the claim made the basis of this suit?  If so, please explain in detail the basis for this contention.

12.      Please state the name, job title, number of years in that position and number of years with Defendant's company of each employee who handled any aspect of the investigation, evaluation or review of Plaintiff's claim made the basis of this suit.

13.      Please identify each and every written instruction, policy language or guideline of

2

any sort which applied to any aspect of Plaintiff's claim made the basis of this suit.

14.    Please state each and every reason this Defendant relied upon to support its non-payment of the claim.

15.    Does this Defendant maintain that it had a legitimate reason(s) for refusing the payment of Plaintiff's claim?  If so, list each such reason and state the policy provision which supports Defendant's position that this was a legitimate basis for refusing to pay and list any and all documents which support the Defendant's ground(s) for denial.  Please include any and all information which may have been input into Colossus and all information output by Colossus.

16.    Please list all actions taken to investigate, review, evaluate or re-evaluate Plaintiff's claim after the initial refusal to pay these claims.

17.    Does this Defendant maintain that Plaintiff or any other person has done or failed to do anything which has impaired this Defendant's ability to investigate, evaluate or review the claim made the basis of this suit?  If so, please explain in detail.

18.    Please state the name, address and qualifications of every expert witness known to you, your agents, employees, investigators or attorneys whom you expect to call as an expert witness at the trial of this case.

19.    As to each expert witness listed in the answer to the previous interrogatory please state:

      a.    the subject matter on which the expert is expected to testify;

      b.    the substance of the facts upon which or about which the expert is expected to testify; and,

      c.    the substance of the opinion or opinions as to which each such expert is

DOCUMENT 3

expected to testify and a summary of the grounds for each such opinion.


s/Thomas P. Melton
Thomas P. Melton
Attorney for Plaintiff


**OF COUNSEL:**

**THOMAS P. MELTON**
**Attorney at Law, L.L.C.**
The Kress Building
301 Nineteenth Street North, Suite 516
Birmingham, Alabama 35203
Direct Dial (205) 458-4556
Direct Fax (205) 458-4557


**PLEASE SERVE PLAINTIFF'S INTERROGATORIES ON DEFENDANT, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; ALONG WITH THE SUMMONS AND COMPLAINT BY CERTIFIED MAIL.**

ELECTRONICALLY FILED
2/20/2017 9:06 AM
49-CV-2017-900017.00
CIRCUIT COURT OF
MARION COUNTY, ALABAMA
DENISE MIXON, CLERK

## IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

| | |
|---|---|
| **MORGAN ALAYNA NICHOLAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) |
| **JOHN DOE, an Unknown Driver;** | ) |
| **STATE FARM MUTUAL AUTOMOBILE** | ) |
| **INSURANCE COMPANY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

COMES NOW the Plaintiff in the above-styled cause and demands that Defendant, State

Farm Mutual Automobile Insurance Company (hereinafter "Defendant") produce the following

items within thirty (30) days as set forth in the Alabama Rules of Civil Procedure:

1.      This Defendant's complete underwriting files referring or relating in any way to

the policy made the basis of Plaintiff's complaint, including, but not limited to:

(a)      All letters, memoranda, and other forms of written communication and

written records of oral communications, whether in person or by telephone, referring or relating

in any way to the issuance of the policy made the basis of Plaintiff's complaint;

(b)      The file folders in which the preceding documents are kept.

2.      All claims manuals, memoranda, directives, letters and other forms of written

communication directed to any claims personnel, claim managers, claim supervisors, or any other

person acting on behalf of Defendant in the handling of the claims, that refer or relate in any way

to the handling of claims generally or to the handling of the claims of like character to the claims

made the basis of Plaintiff's complaint, including, but not limited to:

(a)     The documents reflecting this Defendant's claim settlement policies as they existed at the time Defendant denied the claims made the basis of Plaintiff's complaint; and,

(b)     The documents reflecting any subsequent change of policy.

3.     All documents, correspondence or papers of any sort rejecting the proof of loss or any aspect of Plaintiff's claim.

4.     All statements taken from Plaintiff and/or any other individual with regard to the claim made the basis of this suit, whether written, oral or transcribed.

5.     All documents, papers or items of any sort which were considered by the Defendant prior to its refusal of the claim made the basis of this suit.

6.     All reports or correspondence of any sort between this Defendant and any independent agency with regard to any aspect of the investigation, consideration, payment or refusal of the claim made the basis of this suit.

7.     All memoranda of phone calls made to this Defendant by the Plaintiff or any other person with regard to the claim made the basis of this suit prior to the refusal of this claim.

8.     All correspondence of any sort between this Defendant and any person or entity with regard to any aspect of the investigation, consideration, payment or refusal of the claim made the basis of this suit.

9.     All reports received by this Defendant from any independent person or agency which was hired to investigate, consider, or deal with any aspect of the refusal or consideration of the claim made the basis of this suit.

10.     All information of whatever sort or source considered or possessed by this Defendant prior to the refusal of the Plaintiff's claim.

2

11.    All reports or correspondence received from any expert witness who is retained and is expected to testify in this case.

12.    Defendant's complete claims file relating to the claim made pursuant to Plaintiff's policy including but not limited to the claims made the basis of Plaintiff's complaint, whether maintained in Defendant's field office, regional office, home office or any other office including, without limitation:

(a)    All letters, memoranda, and other forms of written communication to or from any employee of Defendant relating in any way to the processing of the Plaintiff's claims including, but not limited to, the claims made the basis of this suit;

(b)    All written records of any oral communication, whether in person or by telephone, to or from any employee of Defendant relating in any way to the processing of the Plaintiff's claims including, but not limited to, the claims made the basis of this suit;

(c)    All written communication and written records of oral communications, whether in person or by telephone, between any employee of Defendant and Plaintiff relating in any way to the Plaintiff's claims including, but not limited to, the claims made the basis of this suit;

(d)    All written communications and written records of oral communications, whether in person or by telephone, between any employee of Defendant and any third party relating in any way to any of the Plaintiff's claims including, but not limited to, the claims made the basis of this suit;

(e)    All written records of any investigation conducted in connection with any of the Plaintiff's claims including, but not limited to, the claims made the basis of this suit;

3

(f)      All written communications and written records of oral communications, whether in person or by telephone, to or from any employee of Defendant relating in any way to the decision to deny and/or pay any of Plaintiff's claims;

(g)      All written communications and written records of oral communications, whether in person or by telephone, between Plaintiff and any employee of Defendant relating in any way to the decision to deny and/or pay any of Plaintiff's claims;

(h)      All written communications and written records of oral communications, whether in person or by telephone, between any employee of Defendant and any third party relating in any way to the decision to deny and/or pay any of Plaintiff's claims.

(i)      Any and all other written documents pertaining in any way to the Plaintiff's claims including, but not limited to, the claims made the basis of this suit; and,

(j)      The file folders in which the preceding documents are kept.

13.    If, in responding to the above Request for Production of Documents, you withhold production of any documents on the grounds  that they privileged and do not disclose the document, please state with respect to each such document:

(a)      The type of document involved and a general description of the contents of the document;

(b)      The name, business and residence addresses, telephone numbers and position of the individual from whom the document was emanated ;

(c)      The name, business and residence addresses, telephone numbers, and position of each individual to whom the document or copy of the document was sent;

(d)      The date of the document;

4

DOCUMENT 1

(e)     The privilege upon which the Defendant relies in withholding the document;

(f)     The facts upon which Defendant relies in support of its claim that it is privileged to withhold the document;

(g)     The names, business and residence addresses, telephone numbers, and positions or occupations of individuals known or believed by Defendant to have knowledge concerning the factual basis for Defendant's assertion of privilege with regard to the document.

14.     All records of premium payments made by Plaintiff on the policy made the basis of this lawsuit.

15.     All contract and/or policy documents for the policy made the basis of this lawsuit.

s/Thomas P. Melton
Thomas P. Melton
Attorney for Plaintiff

**OF COUNSEL:**

**THOMAS P. MELTON**
**Attorney at Law, L.L.C.**
The Kress Building
301 Nineteenth Street North, Suite 516
Birmingham, Alabama 35203
Direct Dial (205) 458-4556
Direct Fax (205) 458-4557

**PLEASE SERVE PLAINTIFF'S REQUESTS FOR PRODUCTION ON DEFENDANT, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ALONG WITH THE SUMMONS AND COMPLAINT BY CERTIFIED MAIL.**

5



AlaFile E-Notice

49-CV-2017-900017.00

To:   Thomas P. Melton IV
      tmelton@tmeltonlaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS
49-CV-2017-900017.00

The following complaint was FILED on 2/20/2017 9:07:08 AM

Notice Date:     2/20/2017 9:07:08 AM

DENISE MIXON
CIRCUIT COURT CLERK
MARION COUNTY, ALABAMA
132 SOUTH MILITARY STREET
HAMILTON, AL, 35570

205-921-7451
denise.mixon@alacourt.gov



AlaFile E-Notice

49-CV-2017-900017.00

To:  JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INSURANC
CSC LAWYERS INC SERVICE
150 SOUTH PERRY STREET
MONTGOMERY, AL, 36104

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS
49-CV-2017-900017.00

The following complaint was FILED on 2/20/2017 9:07:08 AM

Notice Date:     2/20/2017 9:07:08 AM

DENISE MIXON
CIRCUIT COURT CLERK
MARION COUNTY, ALABAMA
132 SOUTH MILITARY STREET
HAMILTON, AL, 35570

205-921-7451
denise.mixon@alacourt.gov

DOCUMENT 5



AlaFile E-Notice

49-CV-2017-900017.00

To:  STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
     C/O CSC LAWYERS INC SERV
     150 SOUTH PERRY STREET
     MONTGOMERY, AL, 36104

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS
49-CV-2017-900017.00

The following complaint was FILED on 2/20/2017 9:07:08 AM

Notice Date:      2/20/2017 9:07:08 AM

DENISE MIXON
CIRCUIT COURT CLERK
MARION COUNTY, ALABAMA
132 SOUTH MILITARY STREET
HAMILTON, AL, 35570

205-921-7451
denise.mixon@alacourt.gov

| State of Alabama Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>49-CV-2017-900017.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF MARION COUNTY

## MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS

NOTICE TO   JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, INC., CSC LAWYERS INC SERVICE 150 SOUTH PERRY STREET, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY Thomas P. Melton IV

WHOSE ADDRESS IS 301 Nineteenth Street North, Suite 516, Birmingham, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   MORGAN ALAYNA NICHOLS

pursuant to the Alabama Rules of the Civil Procedure

Date   2/20/2017 9:07:08 AM       /s/ DENISE MIXON

Clerk/Register

132 SOUTH MILITARY STREET

HAMILTON, AL 35570

| ☑ Certified Mail is hereby requested | /s/ Thomas P. Melton IV |
|---|---|
| | Plaintiff's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

(Date)

_____          _____          _____

Date                                Server's Signature                  Address of Server

_____          _____          _____

Type of Server                      Server's Printed Name               _____

Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>49-CV-2017-900017.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF MARION COUNTY
### MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS

NOTICE TO STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, C/O CSC LAWYERS INC SERV 150 SOUTH PERRY STREET, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY Thomas P. Melton IV

WHOSE ADDRESS IS 301 Nineteenth Street North, Suite 516, Birmingham, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   MORGAN ALAYNA NICHOLS
    pursuant to the Alabama Rules of the Civil Procedure

Date   2/20/2017 9:07:08 AM       /s/ DENISE MIXON

Clerk/Register

132 SOUTH MILITARY STREET
HAMILTON, AL 35570

| ☑ Certified Mail is hereby requested | /s/ Thomas P. Melton IV |
|---|---|
| | Plaintiff's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____
                                                                                                    (Date)

_____          _____          _____
Date                                 Server's Signature                   Address of Server

_____          _____          _____
Type of Server                       Server's Printed Name

                                                                          _____
                                                                          Phone Number of Server

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

State Farm Mutual Auto Ins. Co.

c/o CSC Lawyers Inc. Serv.

150 South Perry Street

Montgomery, Al 36104

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Avery Harris_  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

Avery Harris   FEB 2 4 2017

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

7015 3430 0000 4220 0382

PS Form **3811**, July 2013          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

AL 360

24 FEB '17

PM 2 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Marion County Circuit Court

P. O. BOX 1595

Hamilton, AL   35570

CV 17   000017





AlaFile E-Notice

49-CV-2017-900017.00

Judge: JOHN H BENTLEY

To:  MELTON THOMAS PLOWDEN IV
     tmelton@tmeltonlaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS
49-CV-2017-900017.00

The following matter was served on 2/24/2017

**D002 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**
**Corresponding To**
CERTIFIED MAIL

DENISE MIXON
CIRCUIT COURT CLERK
MARION COUNTY, ALABAMA
132 SOUTH MILITARY STREET
HAMILTON, AL, 35570

205-921-7451
denise.mixon@alacourt.gov

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Avery Harris_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery  FEB 2 4 2017

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

John Doe % State Farm Auto
CSC Lawyers Inc. Service
150 South Perry Street
Montgomery, Al 36104

3. Service Type
   ☒ Certified Mail®  ☐ Priority Mail Express™
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☒ Yes

7015 3430 0000 4220 0375

PS Form 3811, July 2013          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

AL 360

24 FEB '17

PM 2 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Marion County Circuit Court

P. O. BOX 1595

Hamilton, AL 35570

CV 17 900017





AlaFile E-Notice

49-CV-2017-900017.00

Judge: JOHN H BENTLEY

To:  MELTON THOMAS PLOWDEN IV
tmelton@tmeltonlaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF MARION COUNTY, ALABAMA

MORGAN ALAYNA NICHOLS V. JOHN DOE C/O STATE FARM MUTUAL AUTOMOBILE INS
49-CV-2017-900017.00

The following matter was served on 2/24/2017

**D001 AUTOMOBILE INSURANCE COMPANY, INC. JOHN DOE C/O ST**

**Corresponding To**

CERTIFIED MAIL

DENISE MIXON
CIRCUIT COURT CLERK
MARION COUNTY, ALABAMA
132 SOUTH MILITARY STREET
HAMILTON, AL, 35570

205-921-7451
denise.mixon@alacourt.gov

# Exhibit  B



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 289 3129-C09-42 including any endorsements, if applicable, for the policy term(s) March 09, 2015 to September 09, 2015 and insuring Robert M Nicholas of 5099 Whiteway Dr, Memphis, TN 38117-7234 based on available records.

The policy was in effect on the loss date of May 15, 2015.

Denny O'Donald
Underwriting Team Manager
Date:  3/21/2017

State of Tennessee
County of Rutherford

Subscribed and sworn to before me this 21st day of March , 2017.

My Commission Expires: Feb 18, 2019

Notary Public

1004516

2000 143551 200 03-21-2012

**State Farm Mutual Automobile Insurance Company**

2500 Memorial Boulevard
Murfreesboro TN 37131

| | |
|---|---|
| 61984-3-Z | MUTL VOL |

### DECLARATIONS PAGE

NAMED INSURED

AT2                                    42-1474-3  Z      A
000280  0058
NICHOLAS, ROBERT M
5099 WHITEWAY DR
MEMPHIS TN  38117-7234

| |
|---|
| POLICY NUMBER   289 3129-C09-42 |
| POLICY PERIOD MAR 09 2015 to SEP 09 2015 |
| 12:01 A.M. Standard Time |

AGENT

BARRY SANDERS
6070 QUINCE RD STE 1
MEMPHIS, TN 38119-7212

PHONE: (901)767-2001 or (901)767-2010

ST-1279
0101-3043

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 2008 | FORD | TAURUS | 4DR | 1FAHP24W48G126735 | 407061H000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $358.19 |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000     $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| C | Medical Payments Coverage | $13.80 |
| | Limit - Each Person | |
| | $5,000 | |
| D | Comprehensive Coverage - $1,000 Deductible | $32.15 |
| G | Collision Coverage - $1,000 Deductible | $160.59 |
| H | Emergency Road Service Coverage | $2.30 |
| R1 | Car Rental and Travel Expenses Coverage | $12.42 |
| | Limit - Car Rental Expense | |
| | Each Day,     Each Loss | |
| | $25           $600 | |
| U1 | Uninsured Motor Vehicle Coverage (Bodily Injury | $50.04 |
| | and Property Damage) | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000     $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |

| | | |
|---|---|---|
| Total premium for MAR 09 2015 to SEP 09 2015. | $629.49 | This is not a bill. |

### IMPORTANT MESSAGES

New Policy Form

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9842A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6942A.1   AMENDATORY ENDORSEMENT.

| | |
|---|---|
| | Agent:   BARRY SANDERS |
| | Telephone: (901)767-2001 |
| See Reverse Side | Prepared   MAR 13 2015       1474-BD8 |

00189/02704
155-3866.2 04-2005 (a1o025hd)
1450X0N  (a1o025hd)              (o1a0254c)

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*
Secretary

*Edward B. Rust Jr.*
President

## 6942A.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. The following is added to exclusion 15.b. of **Liability Coverage**, exclusion 14.b. of **Medical Payments Coverage**, exclusion 19.b. of **Physical Damage Coverages**, and exclusion 2.d.(2) of **Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**:

   This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

2. **THIS POLICY**

   The following is added:

   5. *Your* purchase of this policy may allow:

      a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules;

      b. the premium or price for other insurance products purchased by *you* from the *State Farm Companies* to vary; or

      c. the price for non-insurance products or services purchased by *you* to vary. Such products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

3. **DEFINITIONS**

   a. *Resident Relative* is changed to read:

      *Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

      1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

      2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

   b. *State Farm Companies* is changed to read:

      *State Farm Companies* means one or more of the following:

      1. State Farm Mutual Automobile Insurance Company;

      2. State Farm Fire and Casualty Company; and

      3. Subsidiaries or affiliates of either 1. or 2. above.

4. **LIABILITY COVERAGE**

   a. **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

   (1) The exception to exclusion 8. is changed to read:

      This exclusion does not apply to:

      a. *you*;

      b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(2) The exception to exclusion 11. is changed to read:

   This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

   c. private garage while rented to or leased to an *insured*;

5. **MEDICAL PAYMENTS COVERAGE**

   a. **Additional Definitions**

      The following is added under "*Reasonable Expenses* mean the lowest one of the following charges:"

      The fee specified in any fee schedule:

      1. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

      2. as prescribed or authorized by the law of the state where *medical services* are provided.

   b. **Exclusions**

      The exception to exclusion 5. is changed to read:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
6942A.1

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. **PHYSICAL DAMAGE COVERAGES**

**Insuring Agreements**

Item 1.b. is changed to read:

1. **Comprehensive Coverage**

*We* will pay:

b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

(1) during the period that:

(a) starts on the date *you* report the theft to *us*; and

(b) ends on the earliest of:

(i) the date the vehicle is returned to *your* possession in a drivable condition;

(ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

(iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

(2) during the period that:

(a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

7. **GENERAL TERMS**

a. The following is added to 2. **Where Coverage Applies**:

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage apply anywhere in the world.

b. The following is added:

**Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6942A.1

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Medical Payments Coverage**

c. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF TENNESSEE IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Tennessee in the United States of America.

c. The following is added to 4. **Changes to This Policy**:

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

d. Paragraph c. of 5. **Premium** is changed to read:

c. The premium for this policy may vary based upon the purchase of other products or services from the **State Farm Companies**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6942A.1

e.  7. **Nonrenewal** is changed to read:

  7.  **Nonrenewal**

     If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

f.  The first paragraph of b. **How and When We May Cancel** of 8. **Cancellation** is changed to read:

     *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6942A.1



Please read the policy carefully. If there is
an accident, contact your State Farm agent
or one of our Claim Offices at once. (See
"INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Tennessee**
Policy Form 9842A

# CONTENTS

THIS POLICY ............................................ 3

DEFINITIONS ........................................... 4

LIABILITY COVERAGE ........................... 5

   Additional Definition ............................... 5
   Insuring Agreement ................................. 6
   Supplementary Payments .......................... 6
   Limits ................................................... 6
   Nonduplication ....................................... 7
   Exclusions ............................................. 7
   If Other Liability Coverage Applies ............. 8
   Required Out-of-State Liability Coverage ...... 9
   Financial Responsibility Certification .......... 9

MEDICAL PAYMENTS COVERAGE .......... 9

   Additional Definitions ............................. 9
   Insuring Agreement ................................. 10
   Determining Medical Expenses ................... 10
   Arbitration ............................................ 10
   Limit ................................................... 10
   Nonduplication ...................................... 11
   Exclusions ............................................ 11
   If Other Medical Payments Coverage or
   Similar Vehicle Insurance Applies ............... 11
   Our Payment Options .............................. 12

UNINSURED MOTOR VEHICLE
COVERAGES ....................................... 13

   Additional Definitions ............................. 13
   Insuring Agreements ............................... 14
   Consent to Settlement ............................. 14
   Deciding Fault and Amount ....................... 14
   Limits ................................................. 15
   Nonduplication ...................................... 15
   Exclusions ............................................ 15
   If Other Uninsured Motor Vehicle Coverage
   Applies ................................................ 16
   Our Payment Options .............................. 17

PHYSICAL DAMAGE COVERAGES .......... 17

   Additional Definitions ............................. 17
   Insuring Agreements ............................... 18
   Supplementary Payments – Comprehensive
   Coverage and Collision Coverage ............... 19
   Limits and Loss Settlement – Comprehensive
   Coverage and Collision Coverage ............... 20

Limits – Car Rental and Travel Expenses
Coverage ............................................. 21
Nonduplication ...................................... 21
Exclusions ............................................ 21
If Other Physical Damage or Similar Coverage
Applies ................................................ 23
Financed Vehicle ................................... 23
Our Payment Options ............................. 23

DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE .................. 24

   Additional Definition .............................. 24
   Insuring Agreement ................................ 24
   Benefit ................................................ 24
   Exclusions – Death, Dismemberment and
   Loss of Sight Coverage and Loss of Earnings
   Coverage ............................................. 25
   Our Payment Options– Death, Dismemberment
   and Loss of Sight Coverage and Loss of
   Earnings Coverage ................................. 25

LOSS OF EARNINGS COVERAGE ............ 24

   Additional Definitions ............................. 24
   Insuring Agreement ................................ 24
   Limit ................................................... 25
   Exclusions– Death, Dismemberment and
   Loss of Sight Coverage and Loss of Earnings
   Coverage ............................................. 25
   Our Payment Options – Death, Dismemberment
   and Loss of Sight Coverage and Loss of
   Earnings Coverage ................................. 25

INSURED'S DUTIES ............................. 26

   Notice to Us of an Accident or Loss ............ 26
   Notice to Us of Claim or Suit .................... 26
   Insured's Duty to Cooperate With Us ........... 26
   Questioning Under Oath ........................... 26
   Other Duties Under the Physical
   Damage Coverages ................................. 26
   Other Duties Under Medical Payments
   Coverage, Uninsured Motor Vehicle
   Coverages, Death, Dismemberment and
   Loss of Sight Coverage, and Loss of
   Earnings Coverage ................................. 26

**GENERAL TERMS** .......................................... 28
   When Coverage Applies .............................. 28
   Where Coverage Applies ............................. 28
   Newly Owned or Newly Leased Car ............... 28
   Changes to This Policy .............................. 28
   Premium................................................. 28
   Renewal ................................................. 29
   Nonrenewal............................................. 29

Cancellation................................................. 29
Assignment.................................................. 30
Bankruptcy or Insolvency of the Insured ......... 30
Concealment or Fraud ................................... 30
Our Right to Recover Our Payments................ 30
Legal Action Against Us................................. 30
Choice of Law .............................................. 30
Severability ................................................. 31

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:

     (1) The named insured is the sole owner of *your car*.

     (2) Neither *you* nor any member of *your* household has, within the past three years, had:

       (a) vehicle insurance canceled or nonrenewed by an insurer; or

       (b) either:

         (i) a license to drive; or

         (ii) a vehicle registration

         suspended, revoked, or refused.

     (3) *Your car* is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by the named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, transport, store, or park land motor vehicles or any type of trailer.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

   a. *you*;

   b. any *resident relative*;

   c. any other *person* who resides primarily in *your* household; or

   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. *you*; or

   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

      pick up or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

4
9842A

1. related to that named insured or his or her spouse by blood, marriage, or adoption. An unmarried and unemancipated child of that named insured or his or her spouse is considered to reside primarily with that named insured while that child is away at school; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

***State Farm Companies*** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Any of their affiliates.

***Temporary Substitute Car*** means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

***Trailer*** means:

1. only those trailers:

   a. designed to be pulled by a ***private passenger car***;

   b. not designed to carry ***persons***; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

***Us*** means the Company issuing this policy as shown on the Declarations Page.

***We*** means the Company issuing this policy as shown on the Declarations Page.

***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a ***person***, then "*you*" or "*your*" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

***Your Car*** means the vehicle shown under YOUR CAR on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If *you* ask *us* to replace the *car* shown on the Declarations Page with a *car* newly ***owned by you***, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly ***owned by you*** is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "Symbols" on the Declarations Page.

### Additional Definition

***Insured*** means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in *your* household, but only if such *car* is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;

3. any other *person* for his or her use of:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in items 1., 2., or 3. above. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

## Insuring Agreement

1. *We* will pay:

    a. damages an *insured* becomes legally liable to pay because of:

      (1) *bodily injury* to others; and

      (2) damage to property

    caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

    b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

    c. court costs charged to an *insured* and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and

      (2) against which *we* defend an *insured* with attorneys chosen by *us*.

*We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

    a. investigate, negotiate, and settle any claim or lawsuit;

    b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

    c. appeal any award, or legal decision

    for damages payable under this policy's Liability Coverage.

## Supplementary Payments

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above,

the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

    a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

    b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

    *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

    a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

    b. furnish or apply for any bonds; or

    c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

    a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

    b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

## Limits

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will

pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
2. that have already been paid under any Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

   a. *YOU*;

   b. *RESIDENT RELATIVES*; AND

   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that

*insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

   b. any *resident relative*

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;

9. WHILE VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

   a. *OWNED BY*;

   b. RENTED TO;

   c. USED BY;

   d. IN THE CARE OF; OR

   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*.

7

9842A

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION IS-SUED BY A COURT IN A CRIMINAL PRO-CEEDING OR EQUITABLE ACTION;

14. WHILE USING A *TRAILER* WITH A MO-TOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CON-TEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIV-ING;

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY; OR

17. IF THAT *INSURED* IS THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same accident, then:

   a. the Liability Coverage limits of such poli-cies will not be added together to deter-mine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the sin-gle highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* at-tached to it. The Liability Coverage provided

by this policy also applies as primary coverage for the maintenance and use of a *temporary substitute car* and a *non-owned car* if the only insurance provided by the owner of such *car* is from a garage policy.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as pri-mary coverage for the same accident,

      then *we* will pay the proportion of dam-ages payable as primary that *our* applica-ble limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Li-ability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as pri-mary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as pri-mary that the maximum amount that may be paid by the *State Farm Companies* as determined in item 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as pri-mary coverage.

3. Except as provided in item 2. above, the Liabil-ity Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as ex-cess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in item 1. above bears to the sum of such amount and the limits of all

other liability coverage that apply as excess coverage.

### Required Out-of-State Liability Coverage

If:

1. an *insured* is in another state, the District of Columbia, or any province of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

### Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "Symbols" on the Declarations Page.

### Additional Definitions

*Insured* means:

1. *you* and *resident relatives*:

   a. while *occupying*:

      (1) *your car*;
      (2) a *newly acquired car*;
      (3) a *temporary substitute car*;
      (4) a *non-owned car*; or
      (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

   b. if struck as a *pedestrian* by a motor vehicle or any type of trailer.

2. any other *person* while *occupying*:

   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

9

9842A

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fees agreed to by both the *insured's* healthcare provider and *us;* or

3. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

### Insuring Agreement

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident. *We* will only pay such *medical expenses:*

    a. if any of the *medical services* are provided within one year immediately following the date of the accident; and

    b. for *medical services* provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

### Determining Medical Expenses

*We* have the right to:

1. obtain and use:

    a. utilization reviews;

    b. peer reviews; and

    c. medical bill reviews

    to determine if the incurred charges are *medical expenses;*

2. use a medical examination of the *insured* to determine if:

    a. the *bodily injury* was caused by a motor vehicle accident; and

    b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

### Arbitration

1. If there is a disagreement as to whether incurred charges are *medical expenses,* then the disagreement will be resolved by arbitration upon written request of the *insured* or *us.*

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses.* Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

    a. *us;*

    b. the *insured;*

    c. any assignee of the *insured;* and

    d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services.*

5. Subject to items 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

### Limit

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf

10
9842A

of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or any Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF THAT MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;
2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;
3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;
5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

   b. any *resident relative*

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;
6. WHILE VALET PARKING A VEHICLE;
7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;
9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;
10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;
11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;
13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR
14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.
2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by

the *State Farm Companies* as determined in item 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in item 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in item 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

12
9842A

1. The *insured*;
2. The *insured's* surviving spouse;
3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;
4. A *person* authorized by law to receive such payment; or
5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGES

This policy provides:

1. Uninsured Motor Vehicle Coverage (Bodily Injury) if "U";
2. Uninsured Motor Vehicle Coverage (Bodily Injury and Property Damage) if "U1";

is shown under "Symbols" on the Declarations Page.

### Additional Definitions

*Insured* means:

1. *you*;
2. *resident relatives*;
3. any other *person* while *occupying*:
   a. *your car*;
   b. a *newly acquired car*; or
   c. a *temporary substitute car*.

   Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and
4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in items 1., 2., or 3. above.

*Property Damage* means damage to:

1. *your car* or a *newly acquired car*; or
2. property *owned by* an *insured* while in *your car* or a *newly acquired car*.

*Uninsured Motor Vehicle*:

1. under **Uninsured Motor Vehicle Coverage (Bodily Injury)** means:
   a. a land motor vehicle, the ownership, maintenance, and use of which is:
      (1) not insured or bonded for bodily injury liability at the time of the accident; or
      (2) insured or bonded for bodily injury liability at the time of the accident, but:
         (a) the insuring company denies that its policy provides liability coverage for compensatory damages that result from the accident;
         (b) the insuring company is or becomes insolvent; or
         (c) the sum of the liability coverage limits available to the *insured* from all valid and collectible insurance policies, bonds, and securities that apply is less than the limits of this coverage under this policy; or
   b. a land motor vehicle, the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* was *occupying*, then the existence of such land motor vehicle and the facts of the accident must be established by clear and convincing evidence other than evidence provided by occupants of the vehicle occupied by the *insured* when the accident occurred. At the time of the accident, the *insured* must not have been negligent in determining the identity of the other vehicle and the owner or driver of the other vehicle.

2. under **Uninsured Motor Vehicle Coverage (Bodily Injury and Property Damage)** means:
   a. a land motor vehicle, the ownership, maintenance, and use of which is:
      (1) not insured or bonded for bodily injury liability and property damage liability at the time of the accident; or
      (2) insured or bonded for bodily injury liability and property damage liability at the time of the accident, but:
         (a) the insuring company denies that its policy provides liability coverage for compensatory damages that result from the accident;
         (b) the insuring company is or becomes insolvent; or
         (c) the sum of the liability coverage limits available to the *insured* from all valid and collectible insurance policies, bonds, and securities that apply is less than the limits of this coverage under this policy; or

13
9842A

b. a land motor vehicle, the owner and driver of which remain unknown and which causes *bodily injury* to the *insured* or causes *property damage*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* was *occupying*, then the existence of such land motor vehicle and the facts of the accident must be established by clear and convincing evidence other than evidence provided by occupants of the vehicle occupied by the *insured* when the accident occurred. At the time of the accident, the *insured* must not have been negligent in determining the identity of the other vehicle and the owner or driver of the other vehicle.

3. does not include a land motor vehicle:

a. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

b. *owned by*, rented to, or furnished or available for the regular use by *you* or any *resident relative*;

c. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law, or any similar law;

d. *owned by* or rented to any government or any of its political subdivisions or agencies;

e. designed for use primarily off public roads except while on public roads; or

f. while located for use as a dwelling or other premises.

**Insuring Agreements**

1. Under **Uninsured Motor Vehicle Coverage (Bodily Injury)**, *we* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

a. sustained by an *insured*, and

b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

2. Under **Uninsured Motor Vehicle Coverage (Bodily Injury and Property Damage)**, *we* will pay compensatory damages for *bodily injury* and damages for *property damage* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* or *property damage* must be caused by an accident that involves the operation, maintenance, or

use of an *uninsured motor vehicle* as a motor vehicle. The *bodily injury* must be sustained by an *insured*.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. a. The *insured* and *we* must agree to the answers to the following two questions:

(1) Is the *insured* legally entitled to collect compensatory damages from the owner or driver of the *uninsured motor vehicle*?

(2) If the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction, against:

(a) *us*;

(b) the owner and driver of the *uninsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

(c) any other party or parties who may be legally liable for the *insured's* damages;

14
9842A

(2) consent to a jury trial if requested by *us*;

(3) agree that *we* may contest the issues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and, any appeals, if any are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

## Limits

The Uninsured Motor Vehicle Coverage limits for *bodily injury* damages are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident.

The Uninsured Motor Vehicle Coverage limit for *property damage*, if any, is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". This limit is the most *we* will pay for all *property damage* resulting from any one accident.

If the Uninsured Motor Vehicle Coverage limits provided by this policy are greater than the minimum limits required by law, then such limits will be reduced by an amount equal to the sum of the limits of all liability insurance and liability bonds that apply to the accident and are collectible by the *insured*.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

## Nonduplication

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held legally liable for:

(1) *bodily injury* to the *insured*; or

(2) *property damage*,

whether such damages are characterized as compensatory or punitive damages; or

b. for *bodily injury* or *property damage* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law.

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or similar vehicle insurance; or

4. that are *property damage* payable under any policy of property insurance.

## Exclusions

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE*;

2. FOR *PROPERTY DAMAGE* CAUSED WHEN *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IS STRUCK BY A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* WHICH IS NOT INSURED FOR LIABILITY COVERAGE;

3. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

    a.   ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b.   A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c.   ANY GOVERNMENT OR ANY OF IT'S POLITICAL SUBDIVISIONS OR AGENCIES;

    d.   ANY PROPERTY INSURER;

6.  FOR AN **INSURED** WHO SUSTAINS **BODILY INJURY** AS A **PEDESTRIAN** IF OTHER COLLECTIBLE UNINSURED MOTOR VEHICLE COVERAGE HAS LIMITS GREATER THAN THE LIMITS OF UNINSURED MOTOR VEHICLE COVERAGE OF THIS POLICY;

7.  FOR PUNITIVE OR EXEMPLARY DAMAGES;

8.  FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

9.  FOR THE FIRST $200 OF **PROPERTY DAMAGE** RESULTING FROM ANY ONE ACCIDENT.

This exclusion does not apply if:

    a.   the vehicle involved in the accident is insured for Collision Coverage under any policy issued by **State Farm Companies**; and

    b.   the driver of the other vehicle has been positively identified and is solely at fault.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.  If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by one or more of the **State Farm Companies** apply to the same **bodily injury**, then:

    a.   the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b.   the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2.  If this coverage and any other uninsured motor vehicle coverage applies to the same damages, then the priority of recovery and the limits of coverage established by Tennessee Law apply.

3.  The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an **insured** who sustains **bodily injury** while **occupying your car**.

    a.   If the limits of the Uninsured Motor Vehicle Coverage provided by this policy equal the limits of uninsured motor vehicle coverage provided by one or more sources other than the **State Farm Companies** and:

        (1)  this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

        (2)  uninsured motor vehicle coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage that both apply as primary coverage and provide equal limits of coverage.

    b.   If the limits of the Uninsured Motor Vehicle Coverage provided by this policy equal the limits of uninsured motor vehicle coverage provided by one or more sources other than the **State Farm Companies** and:

        (1)  more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

        (2)  uninsured motor vehicle coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in item 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that both apply as primary coverage and provide equal limits of coverage.

4. Except as provided in item 3. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If the limits of the Uninsured Motor Vehicle Coverage provided by this policy equal the limits of uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* and:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that both apply as excess coverage and provide equal limits.

   b. If the limits of the Uninsured Motor Vehicle Coverage provided by this policy equal the limits of uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* and:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in item 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that both apply as excess coverage and provide equal limits.

5. If this coverage and any other coverage applies to *property damage*, then this coverage applies as excess to any kind of coverage that applies to the *property damage*. However, this coverage applies only in the amount by which it exceeds the primary coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1",

is shown under "Symbols" on the Declarations Page. If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily rental charge* means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or
2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;
   b. any other *person* residing in the same household as an *insured*; or
   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

a. an *insured*;
b. any other *person* residing in the same household as an *insured*; or
c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

## Insuring Agreements

1. **Comprehensive Coverage**

   a. *We* will pay for *loss*, except *loss caused by collision*, to a *covered vehicle*.
   b. If *your car* or a *newly acquired car* is stolen, then *we* will pay transportation expenses incurred by an *insured*. These transportation expenses must be incurred during a period that:

      (1) starts on the date *you* report the theft to *us*; and
      (2) ends on the earlier of:

         (a) the date the vehicle is recovered; or
         (b) the date *we* offer to pay *you* for the theft if the vehicle has not yet been recovered.

      These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;
   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

18
9842A

4.  **Car Rental and Travel Expenses Coverage**
    a.  **Car Rental Expense**

    *We* will pay the ***daily rental charge*** incurred when *you* rent a ***car*** from a ***car business*** while *your car* or a ***newly acquired car*** is:

    (1)  not drivable; or

    (2)  being repaired

    as a result of a ***loss*** which would be payable under Comprehensive Coverage or Collision Coverage.

    *We* will pay the ***daily rental charge*** incurred during a period that:

    (1)  starts on the date:

       (a)  the vehicle is not drivable as a result of the ***loss***; or

       (b)  the vehicle is left at a repair facility if the vehicle is drivable; and

    (2)  ends on the earliest of:

       (a)  the date the vehicle has been repaired or replaced;

       (b)  the date *we* offer to pay *you* for the ***loss*** if the vehicle is repairable but *you* choose to delay repairs; or

       (c)  five days after *we* offer to pay *you* for the ***loss*** if the vehicle is:

          (i)  a total loss as determined by *us*; or

          (ii)  stolen and not recovered.

    The amount of any such ***daily rental charge*** incurred by *you* must be reported to *us* before *we* will pay such amount.

    b.  **Travel Expenses**

    *We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a ***newly acquired car*** is not drivable as a result of a ***loss*** which would be payable under Comprehensive Coverage or Collision Coverage. The ***loss*** must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

    (1)  an ***insured*** during the period that:

       (a)  starts after the ***loss*** occurs; and

       (b)  ends on the earlier of:

          (i)  the ***insured's*** arrival at his or her destination or home if the vehicle is left behind for repairs; or

          (ii)  the repair of the vehicle if the ***insured*** waits for repairs before continuing on to his or her destination or returning home; and

    (2)  *you*, or any ***person you*** choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

    These expenses must be reported to *us* before *we* will pay such incurred expenses.

    c.  **Rental Car – Repayment of Deductible Expense**

    *We* will pay the comprehensive deductible or collision deductible an ***insured*** is required to pay the owner of a ***car*** rented from a ***car business***.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the ***covered vehicle*** sustains ***loss*** for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the ***covered vehicle*** sustains ***loss*** for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1.  tow the ***covered vehicle*** immediately after the ***loss***:

    a.  for a reasonable distance from the location of the ***loss*** to any one repair facility chosen by an ***insured*** or the owner of the ***covered vehicle***, if the ***covered vehicle*** is not drivable; or

    b.  to any one repair facility or commercial storage facility, neither of which was chosen by an ***insured*** or the owner of the ***covered vehicle***. *We* will also pay reasonable expenses incurred to tow the ***covered vehicle*** for a reasonable distance from this facility to any one repair facility chosen by an ***insured*** or the owner of the ***covered vehicle***, if the ***covered vehicle*** is not drivable;

2.  store the ***covered vehicle***, if it is not drivable immediately after the ***loss***, at:

    a.  any one repair facility or commercial storage facility, neither of which was chosen by an ***insured*** or the owner of the ***covered vehicle***; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

## Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of items (i) and (ii) above.

         The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts. However, if the *covered vehicle* is the current model year or immediate prior year model, then such parts will not include non-OEM after market crash parts without consent of its owner.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

   (2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

   (3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

   (4) If *you* and *we* agree, windshield glass will be repaired instead of replaced.

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

   (1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

      (a) The owner and *we* will each select a competent appraiser.

      (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

      (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of law, or conduct any questions of fact, decide appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

**1. Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

**2. Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

**3. Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

a. INTENTIONALLY DAMAGED; OR

b. STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

a. THEFT;

b. CONVERSION;

c. EMBEZZLEMENT; OR

d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

       (1) WEAR AND TEAR;

       (2) FREEZING; OR

       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

       OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE STATE WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

    b. THE USE OF WHICH IS NOT LEGAL IN THE STATE WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

    However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

    a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

    b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

22
9842A

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

    a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

    b. *OWNED BY AN INSURED*; AND

    c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING

**If Other Physical Damage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by one or more of the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to:

    a. *your car*; and

    b. a *temporary substitute car* and a *non-owned car* if the only insurance coverage provided by the owner of the *car* is from a garage policy.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in item 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you* except that the creditor's interest will not be invalidated by an intentional act or omission of the owner of *your car*.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed except that the creditor's interest will not be invalidated by an intentional act or omission of the owner of *your car*. The date such termination is effective will be at least 20 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

    a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

        (1) *You*;

        (2) The repairer; or

        (3) A creditor shown on the Declarations Page, to the extent of its interest.

    b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

        (1) *You*;

        (2) The owner of such vehicle;

        (3) The repairer; or

        (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

*We* may, at *our* option, make payment to one or more of the following:

    a. *You*;

    b. The *insured* who incurred the expense; or

    c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE
## LOSS OF EARNINGS COVERAGE

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "Symbols" on the Declarations Page.

#### Additional Definition

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

#### Insuring Agreement

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1.   dies; or

2.   suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days after the date of the accident.

#### Benefit

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

If the amount shown on the Declarations Page for the *insured* is $5,000, *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb & a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb & a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "Symbols" on the Declarations Page.

#### Additional Definitions

*Insured* means a *person* whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

*Total Disability* means the *insured's* inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

*Weekly Earnings* means 85% of all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is 85% of the total earnings for the 52 weeks just prior to the accident divided by 52.

#### Insuring Agreement

*We* will pay the *insured* his or her loss of *weekly earnings*, which occur while the *insured* is living, due to continuous *total disability* that:

1.   is the direct result of *bodily injury* caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle

and not due to any other cause. At the time of the accident, the *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer; and

2. starts within 20 days after the date of the accident and lasts for a period of at least 30 consecutive days. *We* will not pay for the first seven days of the 30 day period.

**Limit**

The most *we* will pay any one *insured* is:

1. $250 for each full workweek of *total disability*; and

2. a pro rata portion of $250 for less than a full workweek of *total disability*.

Subject to the workweek limit, the most *we* will pay any one *insured* for all loss of *weekly earnings* due to any one accident is $15,000.

*We* will pay once every two weeks the *insured's* loss of *weekly earnings* owed.

**Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      Exclusion 2.b. does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of Claim or Suit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Medical Payments Coverage, Uninsured Motor Vehicle Coverages, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examin under oath, provide a statement under oa do both, as reasonably often as *we* re Such *person* or organization must answer tions under oath, asked by anyone *we* and sign copies of the answers. *We* ma quire each *person* or organization answe questions under oath to answer the que with only that *person's* or organization's representative, *our* representatives, any *p* or *persons* designated by *us* to record the tions and answers, and no other *person* pr

5. **Other Duties Under the Physical Da Coverages**

   When there is a *loss*, *you* or the owner *covered vehicle* must:

   a. protect the *covered vehicle* from addi damage. *We* will pay any reasonabl pense incurred to do so;

   b. make a prompt report to the police the *loss* is the result of theft;

   c. allow *us* to:

      (1) inspect any damaged property b its repair or disposal;

      (2) test any part or equipment befor part or equipment is removed paired; and

      (3) move the *covered vehicle* at ou pense in order to conduct such in tion or testing;

   d. provide *us* all:

      (1) records;

      (2) receipts; and

      (3) invoices

      that *we* request and allow *us* to make c and

   e. not abandon the *covered vehicle* to *us*.

6. **Other Duties Under Medical Payments erage, Uninsured Motor Vehicle Cover Death, Dismemberment and Loss of S Coverage, and Loss of Earnings Covera**

   A *person* making claim under:

   a. Medical Payments Coverage, Unins Motor Vehicle Coverages, Death, memberment and Loss of Sight Cove or Loss of Earnings Coverage must:

26
9842A

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

   (a) medical bills;

   (b) medical records;

   (c) wage, salary, and employment information; and

   (d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverages must:

(1) report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within a reasonable time;

(2) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident;

(3) report an accident to *us* within 30 days immediately following the date of the accident;

(4) if making claim for *property damage*:

   (a) give *us* sworn proof of claim within 60 days immediately following the date of the accident. This proof must include a statement as to:

     (i) the names and addresses of those who own the property and the percentage of ownership each has;

     (ii) the amount owed and the liens on such property and the names and addresses of any such creditors and lienholders;

     (iii) the actual cash value of the property at the time of the accident;

     (iv) the amount of the *property damage*;

     (v) the place, time, and other details of the accident;

     (vi) the description and amounts of any other insurance covering such *property damage*.

   (b) protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so.

   (c) allow *us* to:

     (i) inspect any damaged property before its repair or disposal;

     (ii) test any part or equipment before that part or equipment is removed or repaired; and

     (iii) move the damaged property at *our* expense in order to conduct such inspection or testing;

   (d) provide *us* all:

     (i) records;

     (ii) receipts; and

     (iii) invoices

     that *we* request and allow *us* to make copies; and

   (e) not abandon the damaged property to *us*; and

c. Loss of Earnings Coverage must:

(1) make a claim under this policy;

(2) report to us when that *person* has a *total disability*; and

(3) provide proof of continued *total disability* when *we* ask for it.

**GENERAL TERMS**

1. **When Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

   a. in the United States of America and its territories and possessions;

   b. in Canada; and

   c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

3. **Newly Owned or Newly Leased Car**

   If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

   a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

      (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

      (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

   b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

4. **Changes to This Policy**

   a. **Changes in Policy Provisions**

      *We* may only change the provisions of this policy by:

      (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

      (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Tennessee without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   b. **Change of Interest**

      (1) No change of interest in this policy is effective unless *we* consent in writing.

      (2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

         (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

         (b) the legal representative of the deceased named insured.

         This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

         Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

   c. **Joint and Individual Interests**

      When there are two or more named insureds each acts for all to change or cancel the policy.

5. **Premium**

   a. Unless as otherwise provided by an alternative payment plan in effect with the

28
9842A

*State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

6. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in items 7. and 8. below.

7. **Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent address provided to *us* by *you* as the policy address. The mailing of the notice will be sufficient proof of notice.

8. **Cancellation**

a. **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent address provided to *us* by *you* as the policy address. The notice will provide the date cancellation is effective.

The mailing of the notice will be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

(a) during the first 59 days following this policy's effective date; or

(b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the 180 days immediately before the effective date of the policy or during the policy period.

c. **Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

29
9842A

9. **Assignment**

Except as provided below, no assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*. A *person* making claim under the Medical Payments Coverage of this policy may assign the payment of such benefits to the healthcare provider by providing *us* with written notice of such assignment.

10. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

11. **Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

12. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* who has a legal right to collect from another party, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask; and

b. **Reimbursement**

If *we* make payment under this policy and the *person* to or for whom *we* make payment recovers or has recovered from another party, then that *person* must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within two years immediately following the date of the accident:

(1) presents an Uninsured Motor Vehicle Coverage claim to *us*; and

(2) files a lawsuit in accordance with the **Deciding Fault and Amount** provision of this coverage.

Except as provided in c.(2) above, no other legal action may be brought against *us* relating to Uninsured Motor Vehicle Coverage for any other causes of action that arise out of or are related to this coverage until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

14. **Choice of Law**

Without regard to choice of law rules, the law of the State of:

a. Tennessee will control, except as provided in item b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

30
9842A

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

15. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

# Exhibit  C

STATE OF GEORGIA         )
                                   )

COUNTY OF FULTON       )

## AFFIDAVIT OF EILEEN GRIFFIN GILLIAM

Before me, the undersigned Notary Public in and for said County and State, personally appeared Eileen Griffin Gilliam, who is known to me, and who having been duly sworn, does state and testify as follows:

1.     My name is Eileen Griffin Gilliam.  I am above the age of 19 years and suffer no incapacities.

2.     I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") as a Claim Team Manager.  I am the manager responsible for the supervision of Claim No. 42-6K34-643 the ("Claim") under Policy No. 2893-129-42 (the "Policy") issued to Robert M. Nicholas.   This affidavit is based on my personal knowledge and my review of contemporaneously maintained business records of State Farm that are in my custody and control.

3.     The Policy was issued and delivered to Robert M. Nicholas at 5099 Whiteway Drive, Memphis, TN  38117-7234.  The Policy includes Uninsured Motorist ("UM") coverage with bodily injury limits of $250,000 per person.  The Claim concerns an automobile accident that occurred on May 15, 2015 on Interstate Highway 22 between the exits for Alabama Highway 74 and County Road 11, near the city of Redbay, Alabama.  This accident resulted in damage to the insured automobile, a 2008 Ford Taurus, and bodily injuries to Morgan A. Nicholas, who was operating the car at the time of the accident.

4.     State Farm adjusted and paid Collision and Medical Payments coverage applicable to the accident. Ryan Skertich, an attorney representing Robert and Morgan Nicholas at that time, also demanded payment of the $250,000 limits of UM coverage under the policy. Morgan A. Nicholas has now filed a legal action against State Farm concerning her claim for UM coverage under the Policy.

FURTHER THE AFFIANT SAYETH NOT.

_____
Eileen Griffin Gilliam

STATE OF GEORGIA         )
                                   )

COUNTY OF FULTON       )

Sworn to and subscribed before me, a Notary Public in and for said County and State on this the 28th day of March, 2017.

_____
Notary Public

My Commission Expires: _3/19/19_

BRITTNEY HAMMOND
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Commission Expires March 19, 2019